**LOCAL 391, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, and Russ Hogan, Appellees,**

v.

**CITY OF ROCKY MOUNT, North Carolina, and William H. Batchelor, in his official capacity as City Manager of Rocky Mount, North Carolina, Appellants,**

and

**Art Butler, Individually and as Chief of Police of Rocky Mount, North Carolina, Defendant.**

No. 81–1262.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1981.

Decided Feb. 24, 1982.

Rehearing and Rehearing En Banc Denied April 14, 1982.

Jack B. Crawley, Jr., Rocky Mount, N. C. (N. K. Falk, Spruill, Lane & McCotter, Rocky Mount, N. C., on brief), for appellants.

J. David James, Greensboro, N. C. (Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N. C., on brief), for appellees.

1. The district court dismissed the claim against the city manager in his individual capacity, and both claims against the chief of police.

2. Sec. 12–49. Additional regulations applicable to picketing.

Before RUSSELL and HALL, Circuit Judges, FIELD, Senior Circuit Judge.

DONALD RUSSELL, Circuit Judge:

The plaintiffs/appellees, the Chauffeurs, Teamsters and Helpers Local Union No. 391 and its business agent, Russ Hogan, brought this § 1983 action against the City of Rocky Mount (North Carolina), its city manager and its chief of police,[1] charging that defendants' enforcement of a city ordinance prohibiting picketing without a permit within the city was a violation of their First Amendment rights. The district court found the ordinance unconstitutional, and awarded plaintiffs damages and injunctive relief. From that decision, defendants have appealed. We affirm.

Members of the plaintiff Union who were employed by Seaboard Foods, Inc. at its Rocky Mount, North Carolina, plant began a strike on April 2, 1979. When they established picket lines near the plant the next day, they were arrested for picketing on the public right-of-way without a permit in violation of Rocky Mount, N. C. ordinances art. II §§ 12–43 et seq. That ordinance prohibited any "parade, picket line or group demonstration . . . until a permit therefor has been secured." Applications for permits under the ordinance were to be made to the city manager or chief of police at least 72 hours before the planned event unless the city council shortened or waived the waiting period. The ordinance allowed the city manager or chief of police to deny a permit where either found that the applicant's proposed procession would "create hazardous traffic conditions or unduly disturb the convenience of the public in the use of public ways in the city." Id., § 12–44(b). In addition, the ordinance imposed specific limitations upon picketing. See Rocky Mount, N. C., Ordinances art. II §§ 12–49, 51, 52 and 53.[2] Picketing could only take place on the

Picket lines and picketing shall be subject to the following additional regulations:

(a) Picketing may be conducted only on the sidewalks reserved for pedestrian move-

sidewalk. The number of participants could not exceed ten for both sidewalks of a single block. Pickets had to march single file, fifteen feet apart and five feet from the curb. Finally, signs could be no larger than two feet in length and two feet in width.

Shortly after the arrests because of a failure to secure a prior permit, the plaintiff Hogan telephoned the municipality's city manager and requested that the 72 hour waiting period for a permit be waived. As the city council was not then in session, he asked that they be polled by phone. The city manager refused, explaining that the council could not take valid action in that manner. Hogan and other union members nevertheless resumed picketing, and were again arrested for failing to obtain a permit. As with the first group arrested, there was no contention that these picketers did not comply with specific limitations on picketing as set forth in § 12–49.

On April 4, 1979, the plaintiff Hogan applied for a permit on behalf of the Union. The city council in a meeting the following day refused to waive or shorten the waiting period. The permit, however, was granted on April 6, 1979, authorizing plaintiffs to begin picketing on April 7, 1979, and to

continue until April 23, 1979. Subsequent requests for more time were granted, and picketing continued without incident until the strike ended on July 18, 1979.

On April 6, the same day that their permit application was granted, the plaintiffs filed this action in federal district court. They sought a temporary restraining order, preliminary and permanent injunctive relief, declaratory relief, and damages. The complaint specifically challenged the constitutionality of the permit requirement, the waiting period, and the waiting period waiver provisions; they did not challenge that part of the ordinance which regulated the conditions under which picketing might be conducted. The district court denied the temporary restraining order and the preliminary injunction, apparently finding that granting the permit mooted these claims.

After suit was filed defendant Rocky Mount amended that portion of the ordinance relating to the issuance of a permit on September 22, 1980. The amendments reduced the waiting period to 36 hours, directed the city manager to shorten it to 12 hours if he found that the city could take the necessary measures within that time, and required him to decide within 12 hours

ment, and may not be conducted on the portion of a street used primarily for vehicular traffic.

(b) Not more than ten (10) pickets promoting the same objective shall be permitted to use either of the two (2) sidewalks within a single block at any one time.

(c) Pickets may carry written or printed placards or signs not exceeding two (2) feet in width and two (2) feet in length promoting the objective for which the picketing is done; provided, the words used are not derogatory or defamatory in nature.

(d) Pickets must march in single file and not abreast and not march closer together than fifteen (15) feet, except in passing one another. Pickets shall not be allowed to walk more than five (5) feet from the curb line and shall be in continuous motion.

(e) If pickets promoting different objectives desire to use the same sidewalk for picketing and such use would result in the presence of more than ten (10) pickets thereon, the chief of police shall allot time to each group of pickets for the use of such sidewalk on an equitable basis. (Ord. No. 1973–4, § 1, 2–26–73)

Sec. 12–51. Weapons.

It shall be unlawful for any person to carry any gun, knife, blackjack, nightstick or other dangerous weapon or instrument utilized as a weapon while participating in a parade, picket line or group demonstration. (Ord. No. 1973–4, § 1, 2–26–73)

Sec. 12–52. Authority of police.

Police officers may, in the event of the assemblage of persons in such numbers as to tend to intimidate parades, picket lines or group demonstrations pursuing lawful objectives through numbers alone or through use of inflamatory words, direct the dispersal of persons so assembled and may arrest any person who fails to absent himself or herself from the place of such assemblage when so directed by the police. (Ord. No. 1973–4, § 1, 2–26–73)

Sec. 12–53. Obstructing free passage.

Whenever the free passage of any street or sidewalk in the city shall be obstructed by a crowd, the persons composing such crowd shall disperse or move on when directed to do so by a police officer. (Ord. No. 1973–4, § 1, 2–26–73)

of an application whether or not a permit would be granted. No other provisions were affected.

After trial the district court held that the plaintiffs could only challenge the amended ordinance, since the amendments mooted their challenge to its original form. Finding that the amended ordinance was an invalid prior restraint upon expression protected by the First Amendment, the court enjoined defendants from enforcing it and awarded plaintiffs damages for costs incurred as a result of the April 3, 1979, arrests and attorney's fees.[3] Defendants appealed, asserting (a) that Plaintiffs lacked standing, (b) that the ordinance was a valid "time, place and manner" regulation, and (c) that awarding attorney's fees not requested in the complaint was error.

We first address the standing issue. Defendants argue that the plaintiffs do not have standing because their claims are moot. We disagree. Although plaintiffs are not presently picketing, their obligations as representatives of the employees of the nine Rocky Mount area employers with whom they have collective bargaining agreements give them standing to seek to have enforcement of the amended ordinance enjoined. As we held in *Hickory Fire Fighters Ass'n. v. City of Hickory, N. C.,* 656 F.2d 917 (4th Cir. 1981), "the proper test for standing ... is not whether a plaintiff has been arrested or otherwise punished for exercising First Amendment rights in violation of the ordinance, but whether the plaintiff faces 'realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" 656 F.2d 922 n.5, *quoting Babbitt v. United Farm Workers,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979); *see also, County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), *quoting United States v. W. T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). A picketing ordinance poses such a danger to a labor organization maintaining collective bargaining agreements with city businesses. Nor do they lack standing to seek damages. No "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." 440 U.S. 631, 99 S.Ct. at 1383. Neither issuing the permit nor amending the ordinance remedies the effects of the arrests. Those actions do not compensate Hogan for the humiliation that he suffered or reimburse the Union for the legal fees that it paid. Plaintiffs retain a personal stake in recovering these losses by challenging the ordinance as it was written at the time that the arrests were made.[4]

The substantive issue raised by this appeal involves the constitutionality of a municipal ordinance restricting the right to picket in a labor dispute on public streets. In resolving such issue, we begin with the established principle that picketing does "'constitute methods of expression, entitled to First Amendment protection.'"[5] It has however, been described as a "hybrid" in the free speech context,[6] involving as it does an "intermingling of speech and conduct."[7] So far as the strict speech "con-

---

3. The charges against all picketers except one were dismissed and there has been no indication that the state is pursuing its case against him. Thus, we are not faced with any abstention question. *Cf. Younger v. Harris,* 401 U.S. 37, 41, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971).

4. *See Duke Power Co. v. Carolina Env. Study Group,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978). The district court erroneously held that the amendments mooted all of plaintiffs' claims against the original versions of the amended ordinance. Any claim for damages against the amended ordinance would not be ripe, as plaintiffs have not yet been damaged by it. Thus, the damages claim should have been evaluated in light of the ordinance prior to the amendments. This conclusion does not affect the result, however, as our decision rests upon a consideration of provisions which the amendments do not change.

5. *Hickory Fire Fighters Ass'n. v. City of Hickory, N. C.,* 656 F.2d 917, 923, n. 6 (4th Cir. 1981).

6. *Teamsters Union v. Hanke,* 339 U.S. 470, 474, 70 S.Ct. 773, 775, 94 L.Ed. 995 (1950).

7. Note, *Political Boycott Activity and the First Amendment,* 91 Har.L.Rev. 659, 669 (1978). For a critical discussion of what the author finds to be "the dichotomy between speech and conduct," *see* Tribe, *American Constitutional Law,* pp. 600–1 (Foundation Press, 1978).

tent" or the "message" of the picketing is concerned, full First Amendment protection attaches;[8] but, so far as the other aspects of the activity are involved, which have been described as "speech plus"[9] not enjoying "the same kind of freedom [from restraint] . . . as [the First and Fourteenth Amendments] afford to those who communicate ideas by pure speech . . . ,"[10] regulations dealing with reasonable time, place or manner restrictions which are "necessary to further significant governmental interests" may be validly enacted by a municipality provided they are implemented without regard to the content of the "message" or speech.[11] In a recent case, we formulated a clear-cut two-pronged test for determining whether such a "time, place, and manner" regulation by a municipality is valid. The first question to be addressed under this test is whether the City or State had "compelling governmental interests unrelated to speech which justif[ied] time, place, and manner regulations on picketing by ordinance," and, secondly, "if so, whether the ordinance's requirements [were] drawn with narrow specificity and [were] no more restrictive than necessary to secure those interests."[12]

The defendant contends that the part of the ordinance under attack was properly enacted in the public interest in order to protect "the safety and welfare of its citizens, including preservation of access to its public buildings and maintenance of vehicular and pedestrian traffic flow" and that such interest is "sufficiently compelling to warrant restricting the exercise of First Amendment rights by a picketing ordinance."[13] Nor do the plaintiffs deny that the ordinance involved here is facially directed at the protection of these interests. The first requirement of a valid municipal restriction upon picketing on public thoroughfares is, therefore, met. But the ordinance in this case, in so far as it requires a *prior* permit for picketing, goes beyond what is "necessary to secure" those legitimate interests of the public.

■ The ordinance in this case was not simply a requirement for a prior permit for picketing on public streets. It included in addition very specific rules governing the manner in which such picketing might be conducted. Those rules were very broad and restrictive—perhaps as broad and restrictive as they could constitutionally be. The defendant does not deny that such rules, if observed, would fully protect the public interest and convenience in the use of the public streets. The plaintiffs do not challenge the validity of these rules and apparently have at all times complied with their requirements. Since these rules, incorporated as they were in a criminal ordinance, satisfied those compelling public interests which justified any restriction upon the right to picket in public streets, it was unnecessary to burden the plaintiffs with the additional requirement of obtaining a permit. The district court accordingly correctly held that that part of the ordinance requiring a prior permit was invalid as an overbroad and needlessly excessive restriction on free speech.[14]

---

8. *Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85, 94–95, 97 S.Ct. 1614, 1619–1620, 52 L.Ed.2d 155 (1977); *Hudgens v. NLRB*, 424 U.S. 507, 520, 96 S.Ct. 1029, 1036, 47 L.Ed.2d 196 (1976).

9. *Food Employees v. Logan Plaza*, 391 U.S. 308, 326, 88 S.Ct. 1601, 1612, 20 L.Ed.2d 603 (1968) (Douglas, J., concurring).

10. *Cox v. Louisiana*, 379 U.S. 536, 555, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965); *see Carey v. Brown*, 447 U.S. 455, 470, 100 S.Ct. 2286, 2295, 65 L.Ed.2d 263 (1980).

11. *Police Department of Chicago v. Mosley*, 408 U.S. 92, 98, 92 S.Ct. 2286, 2291, 33 L.Ed.2d 212 (1972) ("We have continually recognized that reasonable 'time, place, and manner' regulations of picketing may be necessary to further significant governmental interests.")

12. *Hickory Fire Fighters Ass'n. v. City of Hickory, supra*, 656 F.2d at 923–24.

13. We recognized in *Hickory* that such interests were "sufficiently compelling" to justify regulations, 656 F.2d at 923.

14. We have no occasion under the facts of this case to consider the circumstances under which a municipality might require a permit as a condition to picketing in public areas. *See Poulos v. New Hampshire*, 345 U.S. 395, 73 S.Ct. 1119, 97 L.Ed. 1105 (1953).

The defendants' final contention is that the district court erred in awarding plaintiffs attorney's fees because they did not request them in their complaint. Plaintiffs did request "such ... relief as to the court may seem just and proper." We cannot say that it was not "just and proper" for the district court to grant attorney's fees to the prevailing party in a § 1983 action absent unusual circumstances. *See, e.g., Anderson v. Morris*, 658 F.2d 246 (4th Cir. 1981). Finding no "unusual circumstances" in the present case, we affirm the award.

The judgment of the district court is accordingly

AFFIRMED.